UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

*Duane G Jaworski*
*Frances Jaworski*,

Debtors.

BKY Case No. 13-43296-MER

Chapter 13

MEMORANDUM DECISION

At Minneapolis, Minnesota, November 30, 2018.

This voluntary chapter 13 case came before the Court on the "Motion for Hearing for Final Application for Fees and Expenses by Law Firm for Debtors." The chapter 13 Trustee filed a response in opposition to the application. A hearing was held on the issue on October 11, 2018. Kenneth Keate appeared on behalf of the debtors, and Jeffrey Bruzek appeared for the Trustee. At the conclusion of the proceeding, the Court granted Mr. Keate until October 22, 2018 to file a supplemental brief, and granted Mr. Bruzek an additional seven days to respond to Mr. Keate's brief. On October 22, 2018, Mr. Keate filed two documents: (1) a one-page amendment and supplement to his own statement of fees, and (2) a two-page supplemental reply to the objection of the Trustee to Mr. Keate's fee application. On October 29, 2018, Mr. Bruzek, on behalf of the chapter 13 Trustee Gregory Burrell, filed a supplemental brief. The matter is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This memorandum decision is based on all the information available to the Court and constitutes the Court's findings of fact and conclusions of law under Fed. R. Bank. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

For the reasons stated herein, this Court finds that a debtor's attorney's priority claim for

allowed but unpaid fees does not survive the discharge under § 1328(a), and the Trustee's objection to Mr. Keate's "Final Application for Fees and Expenses" is therefore **SUSTAINED**.

## BACKGROUND

Duane and Frances Jaworski filed their chapter 13 petition on June 28, 2013, and their modified chapter 13 plan was confirmed more than a year later, on November 7, 2014. The Jaworskis then worked steadily over the course of nearly four years to comply with each of their plan payment requirements, and paid the Trustee a total of $150,000.00 by the time of their final payment in June 2018. Throughout that time, Mr. Keate failed to file an application for fees.

More than a month after the Jaworskis made their final payment, Mr. Keate still had not submitted an application for fees. On July 26, 2018, the chapter 13 Trustee filed a motion to compel Mr. Keate to file his fee application in this case by August 10, 2018, stating that, pursuant to the debtors' confirmed modified chapter 13 plan, the Trustee was holding $5,000.00 for the attorney fee claim and had an additional $4,191.22 available. By that time, the Trustee's office was holding a total of more than $55,000.00 in funds earmarked for Mr. Keate in a variety of ongoing bankruptcy cases, including this one. The chapter 13 Trustee stated that Mr. Keate's failure to submit a fee application unduly delayed the Trustee's ability to file: (1) the final report to close the case, and (2) a motion to modify the plan to distribute the remaining available funds to the unsecured creditors.

Mr. Keate cited a plethora of health and computer problems as reasons for his delays in filing his fee applications, and promised to file his fee application in this case by October 1, 2018. A hearing was held on the motion on August 24, 2018, and a resulting order from this Court required Mr. Keate to file his fee application by 4:00 p.m., on September 14, 2018.

On September 14, 2018, the debtors were discharged. That same day, Mr. Keate filed an application for fees for the period from May 15, 2009, to October 28, 2018, totaling $17,527.54,

2

including $456.04 in expenses. The motion stated that the debtors had already paid Mr. Keate $3,408.00; he requested $14,071.56 in net compensation, including $9,491.83 from the Trustee. The Trustee objected to Mr. Keate's motion, stating that: (1) the Trustee's office had only $5,335.08 on hand due to paying the debtors' unsecured creditors' claims – an amount that would have been awarded to Mr. Keate had he filed his fee application in a timely manner; (2) $1,276.00 of the amount requested was for work performed outside the time period allowed in the statute of limitations for fees; and (3) the Trustee was concerned that an order allowing for the full $17,527.54 requested would allow Mr. Keate to seek funds from the debtors after their discharge amounting to approximately $8,784.06.[1]

Mr. Keate has asserted that the debtors agreed to pay him his fees after their discharge, including those fees not covered by the modified chapter 13 plan. This is apparently a common practice for him, and he has stated to this Court that if he is unable to collect fees post-petition and is required to make an initial application for the full amount of his fees, that would cause his clients' cases to be dismissed, because his fees would require his clients to have unaffordable payments in their plans. Mr. Keate's new proposed allowed compensation totaled $12,121.31, including the $3,408.00 already paid by the debtors; the $5,335.08 available from the Trustee; and $47.98 that remains in Mr. Keate's trust account for this case for reasons that are still unclear to this Court.[2] Mr.

---

[1] The $8,784.06, which should actually be $8,784.46, is the difference between the requested amount, less the funds the debtors already paid Mr. Keate, and less the amount the Trustee has available to pay Mr. Keate. [$17,527.54 - $3,408.00 - $5,335.08 = $8,784.46]

[2] Mr. Keate stated the following on the subject in his Supplement to the Statement of Compensation: "At the time of the bankruptcy, our vendor for due diligence searches (which no longer does them) informed me that the search would be $47.98 more than they ended up being. After we filed the bankruptcy, I just kept the $47.98 in my trust account pending the fee application [to] dispose of that."
This explanation does little to explain where the $47.98 came from to begin with, since Mr. Keate's reported costs include the $281.00 filing fee, a $53.00 credit report, $12.00 for due diligence searches, and $18.00 for other costs. These costs total $364.00. When added to the $3,044.00 Mr. Keate claims in fees, the total is $3,408.00, which is the complete amount Mr. Keate has received from the debtors – a fact Mr. Keate has repeatedly confirmed in these proceedings. Therefore, unless the information Mr. Keate supplied is incorrect, it does not appear the funds totaling $47.98 were supplied originally by the debtors, making their origin an ongoing mystery.

3

Keate stated during the October 11, 2018 hearing that the reduced amount was to reflect the funds the Trustee paid to the general unsecured creditors when Mr. Keate did not timely file his fee application. Although Mr. Keate later stated that he would be willing to accept less compensation within the bankruptcy rubric, he made that statement with the explicit understanding that he planned to collect the additional funds from his clients after their case is discharged.[3]

Mr. Keate's application is the sole issue currently creating an impediment to the Trustee's obligations to make a final report and file a final account under § 704(a)(9) of the Bankruptcy Code[4] (made applicable to chapter 13 cases by § 1302(b)(1)).[5]

## DISCUSSION

I. **Attorney's fees are classified as priority claims under the Bankruptcy Code, and must be included in the confirmed plan in order to be paid.**

When debtors file for bankruptcy, they are put in the common position of owing fees to the attorneys who represent them. In contrast, when attorneys accept debtors' bankruptcy cases, attorneys are put in the uncommon position of becoming the very kind of creditors their clients file bankruptcy to avoid.

Understanding the statutory framework governing attorney's fees in chapter 13 cases starts with § 1322(a)(2) of the Bankruptcy Code, which states that a chapter 13 plan "shall provide for full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title,

---

[3] In his most recent Supplemental Reply, Mr. Keate stated he would accept total awarded compensation of $8,335.02 and $456.04 in fees, totaling $8,791.06. This figure includes the $47.98 from the trust account, the $3,408.00 paid by the debtor, and the $5,335.08 on hand with the Trustee's office. However, Mr. Keate stated that he was accepting this amount because the debtors had agreed to pay an additional $3,834.27 directly to Mr. Keate after their discharge. ECF No. 50.

[4] Unless stated otherwise, references to the "Bankruptcy Code" or to specific statutory sections throughout this memorandum decision are to the Bankruptcy Reform Act of 1978, as amended, 11 US.C. § 101, *et. seq.*

[5] Mr. Keate argued during the hearing on October 11, 2018, that these proceedings are moot because of his clients' alleged promise to pay. However, because the debtors' statement concerning payment remains unverified, and because Mr. Keate has several other cases pending with unfiled fee applications in which this very same issue may arise, the issue is not moot. Further, "Voluntary cessation of challenged conduct moots a case only if it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000).

unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. § 1322(a)(2). Under § 507(a)(1), first priority is given to "administrative expenses allowed under section 503(b)," which states that "there shall be allowed, administrative expenses, . . . including-- . . . (2) compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 507(a)(1). Section 303(a)(1) states that the Court may award "(A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . ; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 303(a)(1). Under § 303(a)(2), however, courts may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 303(a)(2).

Taken together, these statutes state that while an attorney may agree otherwise, attorneys who are awarded fees under § 330(a) are entitled to a first priority claim under § 507(a)(1), and these fees must be both provided for in the plan and paid in full under the terms of the chapter 13 plan. In re Connor, 559 B.R. 526, 531 (Bankr. D. N.M. 2016), citing In re Busetta-Silvia, 314 B.R. 218, 222-23 (B.A.P. 10th Cir. 2004).

Once confirmed, the plan rules; it becomes the binding mechanism for all the parties under § 1327.[6] In re Reiser, 569 B.R. 499 (Bankr. D. Minn. 2017). Outside agreements, like the one Mr. Keate references here (and that is apparently included in his retainer agreement), in which the debtors stated they would pay him after discharge, do not control. In re Siemers, 205 B.R. 583, 586 (Bankr. D. Minn. 1997) ("[I]t is the terms of a debtor's Chapter 13 plan that govern the post-confirmation treatment of the claims of participating secured creditors, not the debtor's Statement of Intention or other informal agreement."). Since the debtor's attorney is a creditor, and the confirmed plan governs payment of creditors, the attorney must ensure that the attorney's fees are included in

---

[6] While there are some limited exceptions to this binding effect, including where confirmation is revoked under § 1330, the case is converted or dismissed under § 349, or there are due process defects in the notice of the plan, In re Reiser, 569 B.R. 499 (Bankr. D. Minn. 2017) (citing Hon. Joan N. Feeney, Hon. Michael G. Williams & Michael J. Stepan, Bankruptcy Law Manual § 13:44 (5th ed. 2017)), these exceptions are not applicable here.

5

the plan, and – like all other creditors – must monitor the administration of the plan to ensure that the attorney's claim is paid. Id. ("If a creditor doesn't like the treatment of its claim under the terms of a proposed plan, the creditor's remedy is to object to confirmation, not to ignore the plan and try to attack it later. Once a secured creditor chooses to participate in a bankruptcy case by filing a proof of claim, it acts at its peril and cannot be excused for failing to monitor the treatment of its claim under the terms of a properly noticed Chapter 13 plan.").

Here, Mr. Keate's fees were included in the modified plan as follows:

> 9. PRIORITY CLAIMS – The trustee will pay in full all claims entitled to priority under § 507, including the following. The amounts listed are estimates. The trustee will pay the amounts actually allowed.
>
> . . .
>
> Tax and Bankruptcy Attorney, PLLC . . . [$]5,000.00

ECF. No. 26 ¶ 9. Although Mr. Keate, as a creditor, had the opportunity to agree to a different treatment of his claim, he did not do so. He did not object to the modified plan's confirmation, nor did he raise objections to the treatment of his claim before that confirmation or throughout the four years of this case's administration. Instead, he asked for fees of $5,000.00 to be included in the modified plan – despite being owed over $15,000.00 by the time of the modified plan's confirmation. He thus consciously provided services during the course of this case that exceeded the amounts which could have ever been funded or paid under the terms of the confirmed modified plan.

**II.    A debtor's attorney's unpaid fees, like other approved but unpaid priority claims, will be properly discharged when a plan concludes.**

Ultimately, an attorney is his client's advocate as well as his client's creditor. Just as many creditors will rarely be paid 100 cents on the dollar for their claims against a debtor's estate, an

6

attorney who accepts a debtor as a client must do so with the full knowledge of the possibility that he, too, may be unable to collect 100 cents on the dollar for his claims against the debtor's bankruptcy estate – particularly when he fails to work successfully within the confines of the very law he practices.

In the world of bankruptcy, the plan reigns supreme; its contents provide guidance to the Court, the debtor(s), the trustees, and the creditors concerning the administration of the bankruptcy estate. Under § 1327(a), "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Therefore, when a debtor's plan properly includes a provision discharging any debts provided for by the plan as soon as possible after a debtor completes payments under the plan,[7] the creditors – including the debtor's attorney – are bound by that language. Finding otherwise would go against the entire foundation of bankruptcy: giving debtors the opportunity for a fresh start.

Here, Mr. Keate filed his only fee application three months after the debtors made their final payment under their modified plan, and he only filed his application when faced with the Trustee's motion to compel, and a resulting order of this Court. Through his original application, he requested approval for compensation that would have left a deficit of over $8,700.00 to survive discharge and be paid by the debtors, supposedly independently of their bankruptcy case.

Mr. Keate insists that his practice regarding payment of his fees is a common one, and described his behavior as a "favor" to his clients to ensure their plans are confirmed despite the fees Mr. Keate accrues over the course of their cases. Mr. Keate stated that he discusses the issue with

---

[7] This treatment is required under § 1328, which states, "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . " 11 U.S.C. § 1328.

7

his clients several times over the course of his representation in their cases, and makes it clear through these conversations and in his fee agreement that his clients will very likely have to pay him extra fees outside of their plans. Mr. Keate even went so far as to state on the record that if this Court did not allow him to continue this practice, the result would be a multitude of unconfirmed plans in his clients' cases – all of which Mr. Keate said would be foiled by the requirement that he include his fees in his clients' plans. In short, Mr. Keate argues that "There's no question that [the debtor] has the right to pay me if he chooses to pay me."[8]

While Mr. Keate's statement is certainly true under § 524(f) ("Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."), the key to this concept is that while the debtors may *choose* to pay Mr. Keate beyond the amounts included in their confirmed modified plan, they are by no means *required* to pay Mr. Keate a single cent beyond such included amounts. 11 U.S.C. § 524(f). While this Court is sympathetic to the need for attorneys to be paid what they are owed, Mr. Keate's argument goes directly against the requirements of both the Bankruptcy Code and this case's confirmed modified plan. If Mr. Keate wanted unique treatment of his fee claim – including, even, prevention of the discharge of that claim – he had the opportunity to include such special treatment in the language of the confirmed modified plan. See In re Johnson, 344 B.R. 104, 107-09 (B.A.P. 9th Cir. 2006) (a chapter 13 plan binds all parties, even if it is inconsistent with the Bankruptcy Code; attorneys' fees should not be discharged where the confirmed plan provides that attorneys' fees remaining unpaid upon completion of the plan will be paid directly by the debtor). Absent language stating otherwise, however, "under no circumstances are the [debtors] personally liable to [their attorney] post-discharge." In re Cripps, 549 B.R. 836, 859 (Bankr. W.D. Mich. 2016).

---

[8] October 11, 2018 Hearing, 29:38. ECF No. 48.

8

Additionally, an attorney should not be awarded for his dilatory conduct, no matter how noble he claims his actions to be. The fact remains that Mr. Keate's application was untimely; the debtors' have received their discharge, and Mr. Keate's extraneous fees have been discharged along with all other dischargeable debts. Once confirmed, a plan's language continues to control unless and until it is modified under § 1327(a). The debtors here have completed their payments and a discharge has accordingly been entered. As a result, and as a matter of law, the modified plan cannot now be revised to provide that the compensation award shall survive the discharge. Id. (citing 11 U.S.C. §§ 1329(a), 1328(a)).

## CONCLUSION

A debtor's attorney's claim for fees in a bankruptcy case amounts to something very simple: a priority claim. Like any other claim, it must be included in the debtor's confirmed plan in order to be paid. Further, as would be the case with any other creditor, once an attorney's fees are included in the confines of a confirmed plan, it is up to that attorney to ensure his fees are paid through the administration of the plan, including by filing timely fee applications. Along with all other claims for debts addressed by the plan, if a portion of an attorney's claimed fees remain unpaid upon the debtor's completion of all plan payments, that portion should be discharged under § 1328(a). It is possible for a plan to provide – contrary to § 1322(a)(2) – for a debtor's attorney to be paid his attorney's fees after the plan payments are completed. However, it is the attorney's task to work within the bankruptcy rubric to accomplish this task – not to specifically try to work outside of it and destroy the debtor's fresh start in the process.

Accordingly,

**IT IS HEREBY ORDERED** that the Trustee's objection to the "Application for Fees and Expenses" is **SUSTAINED, as follows:**

1. Tax and Bankruptcy Attorney P.L.C. is allowed compensation in the amount of $8,335.02. and reimbursement of expenses in the amount of $456.04, for a total allowed award of $8,791.06.

2. The pre-petition retainer the debtor paid in the amount of $3,408.00 shall offset the above amount.

3. The $47.98 remaining in Tax and Bankruptcy Attorney P.L.C.'s trust account for this case shall also offset the above amount, and may be transferred from the firm's trust account into the Corporation's general account.

4. The Trustee may pay the movant the remaining $5,335.08 of allowed fees as an administrative expense as funds become available to him.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *11/30/2018*
Lori Vosejpka, Clerk, by MJS

*/e/ Michael E. Ridgway*
Michael E. Ridgway
United States Bankruptcy Judge